1

CHRISTOPHER COX (Bar. No. 151650)
Email:  chris.cox@weil.com

2

WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway

3

Redwood Shores, CA  94065
Telephone:  (650) 802-3000

4

Facsimile:  (650) 802-3100

5

DAVID L. YOHAI (admitted *pro hac vice*)
Email:  david.yohai@weil.com

6

ADAM C. HEMLOCK (admitted *pro hac vice*)
Email:  adam.hemlock@weil.com

7

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue

8

New York, NY  10153
Telephone:  (212) 310-8000

9

Facsimile:  (212) 310-8007

10

Attorneys for Defendants
PANASONIC CORPORATION

11

PANASONIC CORPORATION OF NORTH AMERICA

12

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

SAN JOSE DIVISION

16

17

INNOVUS PRIME LLC,

18

Plaintiff,

19

v.

20

PANASONIC CORPORATION, PANASONIC
CORPORATION OF NORTH AMERICA,

21

22

Defendants.

23

24

25

| | |
|---|---|
| Case No. 12-0660 RMW | |

**DEFENDANTS PANASONIC CORPORATION AND PANASONIC CORPORATION OF NORTH AMERICA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date:      June 21, 2013
Time:      9:00 a.m.
Place:      Courtroom 6
Hon. Ronald M. Whyte

Complaint Filed:  February 9, 2012

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

RELIEF REQUESTED ...........................................................................................................1

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................3

I.      PARTIES ...................................................................................................................3

II.     THE '350 PATENT AND ITS ASSIGNMENT HISTORY .....................................4

III.    PANASONIC'S AUTHORIZATION TO PRACTICE THE '350 PATENT ...................5

        A.      The 1982 Agreement......................................................................................5

        B.      The 2007 Agreement......................................................................................6

        C.      The Present Litigation ...................................................................................7

LEGAL ARGUMENT ...........................................................................................................8

IV.     APPLICABLE LEGAL STANDARD.......................................................................8

V.      PANASONIC IS PROTECTED FROM CLAIMS FOR DIRECT
        INFRINGEMENT OF THE '350 PATENT ............................................................11

        A.      The Accused Products Are Covered by the 1982 Agreement...............................11

        B.      The 1982 Agreement Authorizes Panasonic To Practice The '350 Patent ...........12

        C.      Innovus Cannot Contest The Validity Of The 1982 Agreement .........................13

        D.      Panasonic And Philips Have Confirmed The Application And Scope Of
                The 1982 Agreement As It Applies To The Patent-In-Suit, Which Innovus
                Has No Factual Basis To Dispute ......................................................................15

VI.     CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) ................................................................................ 9

Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.,
   No. 3:09-CV-212, 2010 WL 174078 (D. Conn. Jan. 14, 2010) ............................ 14

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ............................................................................ 8, 9

De Forest Radio Tel. & Tel. Co. v. United States,
   273 U.S. 236 (1927) ............................................................................ 13

F.B.T. Prods., LLC v. Aftermath Records,
   621 F.3d 958 (9th Cir. 2010) .................................................................... 9

In re Cybernetic Servs., Inc.,
   252 F.3d 1039 (9th Cir. 2001) ................................................................. 13

L.L. Brown Paper Co. v. Hydroiloid, Inc.,
   118 F.2d 674 (2d Cir. 1941) ..................................................................... 14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ............................................................................... 9

Moore Constr. Co. v. Quanta Specialty Lines Ins. Co.,
   No. 1:08-CV-00020, 2009 WL 1759691 (E.D. Cal. Jun. 22, 2009) ...................... 9

Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.,
   701 F.2d 95 (9th Cir. 1983) ........................................................... 9, 10, 15

Old Colony Trust Co. v. Omaha,
   230 U.S. 100 (1913) ............................................................................. 14

Pac. West Group, Inc. v. Real Time Solutions, Inc.,
   321 F. Appx. 566 (9th Cir. 2008) .............................................................. 8

Pac. Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co., Inc.,
   69 Cal. 2d 33 (Cal. 1968) ....................................................................... 9

Quanta Computer, Inc. v. LG Elecs., Inc.,
   553 U.S. 617 (2009) ............................................................................. 14

Sanofi, S.A. v. Med-Tech Veterinarian Prods., Inc.,
   565 F. Supp. 931 (D.N.J. 1983) ............................................................... 14

TransCore, LP v. Elec. Transaction Consultants Corp.,
   563 F.3d 1271 (Fed. Cir. 2009) ...................................................... 12, 13, 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. v. King Features Entm't, Inc.,
    843 F.2d 394, 398 (9th Cir. 1988) ........................................................................................ 10

V-Formation, Inc. v. Benetton Group SpA,
    No. 02-CV-02259, 2006 WL 650374 (D. Colo. Mar. 10, 2006) ........................................... 14

Wolf v. Walt Disney Pictures and Television,
    162 Cal. App. 4th 1107, 1126 (Cal. Ct. App. 2008) ............................................................... 9

**STATUTES**

35 U.S.C. § 154(c) ................................................................................................................... 2, 4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56(c) .................................................................................... 1, 8

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 21, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 4th Floor, at 280 South 1st Street, San Jose, California, Defendants Panasonic Corporation and Panasonic Corporation of North America (collectively "Panasonic") will move pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for an order granting summary judgment in favor of Panasonic on Plaintiff Innovus Prime, LLC's patent infringement claims asserted in the above-captioned action.

This motion is and will be based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the concurrently-filed Declarations of Tetsuyuki Watanabe, Ruud Peters, and David L. Yohai and the supporting exhibits attached thereto, the complete pleadings and records on file herein, and on such other evidence and argument as may be presented to the Court at or before the hearing on this motion.

## RELIEF REQUESTED

Panasonic Corporation and Panasonic Corporation of North America seek summary judgment as to Plaintiff's patent infringement claims on the grounds that an agreement between prior assignee of U.S. Patent No. 5,280,350 and Defendants authorized Defendants to practice that patent for its entire term.

## PRELIMINARY STATEMENT

Defendants Panasonic Corporation (formerly known as Matsushita Electric Industrial Co., Ltd.) and its subsidiary Panasonic Corporation of North America (collectively "Panasonic") bring this motion for summary judgment on Plaintiff Innovus Prime, LLC's ("Innovus") patent infringement claims because Panasonic has the right to practice U.S. Patent No. 5,280,350 (the "'350 Patent") through an agreement with Philips that is binding on Innovus as a subsequent assignee of the '350 Patent.[1]  Almost thirty years ago, Panasonic and Philips entered into an agreement through which Panasonic and its subsidiaries received broad non-assertion rights with

---

[1] Panasonic's original counterparty to the agreement was N.V. Philips Gloeilampenfabrieken, which currently does business under the name Koninklijke Philips Electronics.  For ease of reference, the name "Philips" will be used to refer to this entity.

respect to any Philips or its subsidiaries' patents in audio and video products that was filed or entitled to a priority date before 2005 (the "1982 Agreement"). Panasonic and Philips subsequently reaffirmed the broad scope of the 1982 Agreement in 2007 (the "2007 Agreement"). For decades, neither Panasonic nor Philips has questioned the validity of the 1982 Agreement or whether Panasonic and its subsidiaries are protected from threats of infringement for the manufacture and sale of audio and video products which allegedly practice the patents covered by the 1982 Agreement.

The '350 Patent was filed on August 29, 1991 and issued to a Philips subsidiary on January 18, 1994. The patent is currently being asserted against Panasonic's Viera® family of televisions and video projectors (the "Accused Products"). See Dkt. No. 45, First Am. Compl. at ¶ 30. Pursuant to the 1982 Agreement, each party agreed not to assert against the other party any patents that were filed or entitled to a priority date before 2005 that are relevant to "all kinds of audio and video products." Additionally, the term "video products" is defined broadly to include "television receivers, video tape recorders, video cameras, video recorder camera combinations, optical and non-optical video discs and video disc players as well as facsimile, teletext, viewdata and similar systems." Components of such video products are also covered. The '350 Patent is an audio/video patent that was filed and which issued well before 2005 and is therefore a covered patent which Panasonic is authorized to practice under the 1982 Agreement.

Indeed, both parties to the 1982 Agreement confirm the plain and unambiguous language of that Agreement. The declarations submitted herewith of Philips' representative Ruud Peters and Panasonic's representative Tetsuyuki Watanabe leave no doubt that the parties to the 1982 Agreement concur that Panasonic received broad non-assertion rights that authorize Panasonic to practice the '350 Patent in the Accused Products. Specifically, both Philips and Panasonic representatives confirm that because the '350 Patent was filed on August 29, 1991 and issued to Philips on January 18, 1994, it is covered by the 1982 Agreement, and Panasonic was therefore entitled to practice the patent for the life of the patent.[2] The 2007 Agreement, moreover, does not

---

[2] The patent expired no later than August 29, 2011, i.e. twenty years after filing. 35 U.S.C. § 154(c).

otherwise modify the terms of the 1982 Agreement with respect to patents there were filed or entitled to a priority date before January 1, 2005. Instead, the 2007 Agreement is entirely consistent with the 1982 Agreement and specifically refers to "Covered Patents" as patents filed or entitled to a priority date "prior to expiration of the original agreement (January 1, 2005)," and the rights to practice the covered patents extend for the lives of those patents.

Innovus obtained rights to the '350 Patent in April 2011 – nearly 17 years after the patent's issuance and twenty years after filing – and now refuses to acknowledge Panasonic's rights to practice the patent. Under controlling law, the non-assertion rights granted by Philips traveled with the '350 Patent and are binding on Innovus. Any patent rights that Innovus has to the '350 Patent are exhausted with regard to Panasonic's video products and components. Nor can Innovus dispute the shared understanding of Philips and Panasonic concerning the meaning of the 1982 Agreement and the intent of the contractual parties to establish reciprocal non-assertion rights of their patents with respect to audio and video products.

Ultimately this is exactly the type of case for which summary judgment was intended. The plain language of the 1982 Agreement is unambiguous, and the meaning of this plain language is further confirmed in the sworn declarations of both parties to that Agreement. Although Plaintiff requested and received months of additional time to conduct depositions of these declarants, Plaintiff has failed to depose either individual. See Declaration of David Yohai ("Yohai Decl.") dated May 10, 2013, at ¶ 2. Furthermore, the documents produced in this matter do not change the Agreement's meaning. Plaintiff therefore cannot present any evidence to contradict Panasonic's and Phillip's shared understanding of the meaning of the 1982 Agreement's plain language. In short, there is no factual issue for trial, and Panasonic's motion for summary judgment should be granted.

## STATEMENT OF FACTS

### I.    PARTIES

Defendant Panasonic Corporation is a multinational corporation that was incorporated under the laws of Japan in 1918. Declaration of Tetsuyuki Watanabe ("Watanabe Decl."), dated April 26, 2012, at ¶ 2. Defendant Panasonic Corporation maintains its principal place of business

1  in Osaka, Japan, and focuses its global operations on the manufacture and distribution of various

2  electronic products.  Id.  Defendant Panasonic Corporation of North America has been a

3  subsidiary of Defendant Panasonic Corporation since 1959, is organized under the laws of

4  Delaware, and maintains its principal place of business in New Jersey.  Id.

5      Plaintiff Innovus is a limited liability company that was organized under the laws of

6  Nevada in March 2011.  See Dkt. No. 45, First Am. Compl. at ¶ 1.  On information and belief,

7  Innovus is engaged in the business of acquiring patent rights for licensing and enforcement.

8  Innovus became the owner of the '350 Patent though an assignment on April 17, 2011.  See

9  Yohai Decl., Assignment History of U.S. Patent Number 5,280,350, Ex. 5 at Reel 026156, Frame

10  0356-59.

11  **II.   THE '350 PATENT AND ITS ASSIGNMENT HISTORY**

12      The '350 Patent, entitled *Method And Apparatus For Processing A Picture Signal To*

13  *Increase The Number Of Displayed Television Lines Using Motion Vector Compensated Values*,

14  was issued on January 18, 1994 to a Philips subsidiary, U.S. Philips Corporation, based on an

15  application filed on August 29, 1991.  See Yohai Decl., U.S. Patent Number 5,280,350, Ex. 1.

16  On February 1, 2008, U.S. Philips Corporation assigned its interest in the '350 Patent to NXP

17  B.V.  See Yohai Decl., Ex. 2 at Reel 020462, Frame 0044-47.  This assignment, however, was

18  made "subject to all existing rights, commitments, licenses, non-assertion agreements and the like

19  made by Assignor, KONINKLIJKE PHILIPS ELECTRONICS N.V. and/or its affiliates under

20  said Patent Rights and to any extensions of term and/or renewal thereof."  See Yohai Decl., Ex. 3

21  at Reel 021411, Frame 0447.  On February 7, 2010, approximately two years following the

22  assignment from U.S. Philips Corporation, NXP B.V. assigned all rights to the '350 patent to

23  NXP Holding (now Trident Microsystems (Far East) LTD).  See Yohai Decl., Ex. 4 at Reel

24  023928, Frame 0496, 0502-0506.  Trident Microsystems (Far East), in turn, assigned all its rights

25  to Innovus on April 17, 2011.  See Yohai Decl., Ex. 5 at Reel 026156, Frame 0356-59.  The '350

26  Patent is now expired.  35 U.S.C. § 154(c).

27

28

**III.     PANASONIC'S AUTHORIZATION TO PRACTICE THE '350 PATENT**

     **A.     The 1982 Agreement**

On December 20, 1982, Philips and Panasonic entered into the 1982 Agreement, which memorialized and "reconfirm[ed the parties'] principle understanding with respect to the right of either party to use patent rights of the other party." Watanabe Decl., 1982 Agreement, Ex. 1 at 1. Specifically, Panasonic and Philips agreed not to assert against the other any patent rights that are relevant to "all kinds of audio and video products." Id.; see Declaration of Ruud Peters ("Peters Decl."), dated April 24, 2012, at ¶ 2.  The 1982 Agreement defines broadly the term "video products" to include "television receivers, video tape recorders, video cameras, video recorder camera combinations, optical and non-optical video discs and video disc players as well as facsimile, teletext, viewdata and similar systems." Watanabe Decl., Ex. 1 at 1. Pursuant to the 1982 Agreement, components of audio and video products and accessories are similarly covered. See id.  Moreover, the 1982 Agreement bound not only Philips but also "its subsidiaries and otherwise controlled affiliates, the US Philips Trust and its subsidiaries and otherwise controlled affiliates." See id.

The 1982 Agreement initially covered patents filed or entitled to a priority date prior to January 1, 1990.  See id. Ex. 1 at 2.  However, the 1982 Agreement automatically extended for additional five-year periods, unless either Panasonic or Philips elected not to extend the 1982 Agreement by serving notice at least one year prior to the end of the then-current period.  See id. During any five-year extension period, the 1982 Agreement would cover any patents filed or entitled to a priority date during such a period.  See id.  ("Thereafter the above arrangements will similarly apply to patent rights filed or entitled to a priority date prior to the end of the subsequent five year period unless terminated by one year prior notice in writing.").     Importantly, Panasonic's non-assertion rights extended for "the respective full lives of the patent rights concerned."  See Watanabe Decl. at ¶ 5, Ex. 1 at 2; Peters Decl. at ¶ 3.

On October 22, 2003, Philips provided notice to Panasonic of its decision not to renew the 1982 Agreement for an additional five-year term, and therefore the Agreement expired as of January 1, 2005.  See Watanabe Decl. at ¶ 5; Peters Decl. at ¶ 3.  Thus, under the terms of the

1  1982 Agreement, Panasonic enjoyed non-assertion rights with respect to any of Philips' or its

2  subsidiaries' covered patents filed or entitled to a priority date prior to January 1, 2005 for the life

3  of those covered patents.  See Watanabe Decl. at ¶¶ 5-6, Ex. 1 at 2; Peters Decl. at ¶¶ 3-4.

4      **B.      The 2007 Agreement**

5      Following the termination of the 1982 Agreement, Panasonic and Philips entered into a

6  separate agreement (the "2007 Agreement"), in which they clarified that the definition of "video

7  products" in the 1982 Agreement also covered six product categories developed during the

8  intervening years: mobile phones, digital still cameras, car navigation systems, optical drives,

9  personal computers, and facsimiles.  See Watanabe Decl. ¶ 7, 2007 Agreement, Ex. 2 at § 1.7,

10 2.1.[3]  The 2007 Agreement, however, did not otherwise modify the terms of the 1982 Agreement

11 and did not alter the scope of the 1982 Agreement with respect to any other audio or video

12 products, such as televisions, or the temporal scope of Panasonic's rights to practice the covered

13 patents for the full lives of those patents.  See Watanabe Decl. at ¶ 7; Peters Decl. at ¶ 6.

14     Indeed, the 2007 Agreement states that Panasonic and Philips "acknowledge and

15 understand that pursuant to the Original Agreement [the 1982 Agreement], neither [Panasonic]

16 nor Philips shall assert any patent rights against the other with respect to 'audio and video

17 products' manufactured and sold by the other Party as defined in the Original Agreement [the

18 1982 Agreement]."  Watanabe Decl., Ex. 2 at "Second Whereas Clause."  In addition, the 2007

19 Agreement refers to the "Covered Patents" as patents filed or entitled to a priority date "prior to

20 expiration of the original agreement (January 1, 2005)," reaffirming the rights granted to

21 Panasonic under the 1982 Agreement.  See id. at § 1.5.

22     Philips and Panasonic both agree on the meaning and effect of the Agreements.  Ruud

23 Peters, Philips' Chief Intellectual Property Officer and the Philips corporate representative who

24 executed the 2007 Agreement, affirms that "to the extent that Philips was issued a patent prior to

25 January 1, 2005, Philips agreed not to assert that patent against Panasonic, for the life of that

26 _____

27 [3]The copy of the 2007 Agreement attached to Mr. Watanabe's declaration contains limited
   redactions of commercially sensitive provisions of the agreement, which have no bearing on the
   motion.  Plaintiff's counsel advised Panasonic's counsel that Innovus did not object to attaching a
28 redacted form of the 2007 Agreement to this motion.

1   patent, with respect to televisions and other 'audio and video products' as that term is defined in

2   the 1982 Agreement (as modified by 2007 Agreement)." See Peters Decl. at ¶ 7.  Panasonic's

3   representative Tetsuyuki Watanabe – who is the person at Panasonic most knowledgeable on

4   these agreements – also attests that Panasonic's understanding coincides with that of Philips.  See

5   Watanabe Decl. at ¶ 8.  Plaintiff has not deposed either Mr. Peters or Mr. Watanabe and therefore

6   has not gathered any testimony to dispute this understanding.

7          C.      The Present Litigation

8          Just four months after being assigned the '350 Patent, and after 30 years of Panasonic and

9   Philips performing under the Agreements, Innovus filed an action against Panasonic and several

10  other companies, alleging that Panasonic and the other companies directly infringed the '350

11  Patent and had "induced infringement of and/or contributed to the infringement of one or more

12  claims of the '350 Patent."  Yohai Decl., Ex. 6, First Amended Complaint at ¶ 30, dated October

13  29, 2011.  After conferring extensively with Innovus' counsel to apprise Innovus of Panasonic's

14  non-assertion rights under the Agreements and further explaining its position by letter, Panasonic

15  requested that Innovus promptly withdraw its claims against Panasonic to avoid unnecessary fees

16  and costs in defending against a patent infringement claim.  See Yohai Decl., Ex. 7, Letter from

17  David Yohai to John Carpenter, dated October 25, 2011.  Panasonic's counsel also explained that

18  the 1982 Agreement authorized Panasonic to practice the '350 Patent in the Accused Products, to

19  which Innovus is bound as a subsequent assignee.  Innovus failed to drop its action and Panasonic

20  filed a motion for summary judgment on December 30, 2011.  Prior to a ruling on the motion,

21  however, the court granted a motion to dismiss brought by a separate defendant on misjoinder

22  grounds and *sua sponte* dismissed the action against Panasonic.  On February 9, 2012 Innovus

23  filed the instant action alleging one count of infringement against Panasonic.[4]  See Dkt. 1, Compl.

24  at ¶¶ 9-12.

25

26

27

28

---

[4] Innovus also filed individual actions against the other defendants from the previous actions.  See Innovus Prime LLC v. Toshiba Corporation, et al., 4:12-cv-00659-PJH (Feb. 9, 2012); Innovus Prime LLC v. Mitsubishi Electric Corporation, et al., 4:12-cv-00751-YGR (Feb. 15, 2012); and Innovus Prime, LLC v. Vizio Inc., 3:12-cv-00658-WHA (Feb. 9, 2012).

1    Panasonic filed a Notice of Motion and Motion for Summary Judgment on August 15,

2    2012.  See Dkt. 26.  On August 22, 2012, Innovus filed a Notice of Motion and Rule 56(d)

3    Motion requesting that the Court deny Panasonic's motion without prejudice or continue the

4    hearing on Defendant's motion because Innovus allegedly had "no opportunity to discover

5    information that is essential to its opposition."  See Dkt. 29 at 2, 4 (emphasis in original).

6    Specifically, Innovus requested an additional 120-day period in order to "conduct discovery to

7    present facts essential to justify its opposition."  See id. at 2, 3.  On September 20, 2012, the

8    Court continued the hearing on Panasonic's motion and ordered that Innovus could take the

9    deposition of Mr. Watanabe and Mr. Peters, who submitted declarations in support of Panasonic's

10   motion for summary judgment.  See Dkt. 47.  The Court further set April 30, 2013 as the close of

11   summary judgment-related discovery.  See id.  Despite receiving months of additional time,

12   however, Innovus did not depose either individual specified in the Court's Order.

13                                  **LEGAL ARGUMENT**

14   **IV.     APPLICABLE LEGAL STANDARD**

15          Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary

16   judgment shall be granted when a party can "show that there is no genuine issue as to any

17   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

18   Proc. 56(c); see also Pac. West Group, Inc. v. Real Time Solutions, Inc., 321 F. Appx. 566, 569

19   (9th Cir. 2008) ("Summary judgment is appropriate when 'the pleadings, the discovery and

20   disclosure materials on file, and any affidavits show that there is no genuine issue as to any

21   material fact and that the movant is entitled to judgment as a matter of law.'").  As the Supreme

22   Court has noted, "[o]ne of the principal purposes of the summary judgment rule is to isolate and

23   dispose of factually unsupported claims or defenses, and . . . [the rule] should be interpreted in a

24   way that allows it to accomplish that purpose."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-23

25   (1986).[5]  The Court further stated in Celotex that:

26

27   _____

     [5] See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (summary
28   judgment pierces the pleadings and assesses the proof to determine whether there is a genuine
     need for trial).

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT          8          Case No. 12-0660 RMW

> [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."

Id. at 327.  Although, when ruling on a motion for summary judgment, a court generally should draw all inferences in a light most favorable to the nonmoving party, it is well-established that the nonmoving party cannot defeat summary judgment simply by raising "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or by adducing evidence that is "merely colorable or is not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

The rules governing the application of summary judgment to contract cases are well-established in the Ninth Circuit.  Summary judgment may be granted if the language of such contract, and the inferences to be drawn from that language, are unambiguous.  See F.B.T. Prods., LLC v. Aftermath Records, 621 F.3d 958, 964-67 (9th Cir. 2010); Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983).  A court should give effect to the plain meaning of the contractual language, giving due consideration to the surrounding circumstances and the purpose which the parties sought to accomplish.  When the surrounding circumstances establish that a contract has been in existence and operation for years without objection from the parties thereto, a determination that a contract is unambiguous is particularly appropriate.  See Moore Constr. Co. v. Quanta Specialty Lines Ins. Co., No. 1:08-CV-00020, 2009 WL 1759691, at *10 (E.D. Cal. Jun. 22, 2009) ("The parties' action or performance under the provisions of a contract may render the parties' intent sufficiently clear, such as where one party performs and the other accepts the performance without objection.  The practical construction placed upon a contract by the parties before any controversy has arisen as to the meaning of the contract is considered a reliable method of ascertaining the intent of the parties.") (citation omitted).  Even where a contract is determined to be "plain and unambiguous on its face," a court considers extrinsic evidence where such evidence "is relevant to prove a meaning to which the language of

the instrument is reasonably susceptible." <u>Pac. Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co., Inc.</u>, 69 Cal. 2d 33, 37 (Cal. 1968); <u>Wolf v. Walt Disney Pictures and Television</u>, 162 Cal. App. 4th 1107, 1126 (Cal. Ct. App. 2008) (a trial court "provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible"). However, if the court determines that the language is not reasonably susceptible to the asserted interpretation and is unambiguous, "extrinsic evidence cannot be received for the purpose of varying the terms of the contract." <u>See</u> <u>U.S. v. King Features Entm't, Inc.</u>, 843 F.2d 394, 398 (9th Cir. 1988) (rejecting extrinsic evidence because the agreement was not reasonably susceptible to the proffered interpretation).

A party cannot avoid summary judgment by relying upon the mere possibility of a factual dispute as to a contract's interpretation or by expecting the court to draw inferences favorable to it when they are wholly unsupported. <u>See</u> <u>Argonaut Ins.</u>, 701 F.2d at 96. Even if a contract were arguably ambiguous, summary judgment is still appropriate when the nonmoving party can offer no evidence to support an alternative interpretation of the contract that would contradict the moving party's evidence concerning the meaning and development of the contract at issue. <u>See</u> <u>id.</u>

Under these standards, Panasonic is entitled to summary judgment on Innovus' infringement claim as Panasonic cannot be liable for infringement as a matter of law. Indeed, as discussed below, the plain and unambiguous language of the 1982 Agreement – as well as the unanimous understanding expressed in the declarations of the parties to that agreement – shows there can be no reasonable dispute regarding Panasonic's authorization to practice the '350 Patent in the Accused Products for the life of that patent. This is especially so given that – <u>for nearly 30 years</u> – Panasonic and Philips have recognized the validity of and authorizations granted under the 1982 Agreement. Moreover, Plaintiff is not able to present any evidence disputing the plain language of the 1982 Agreement. The 1982 Agreement expressly authorized Panasonic's sales of the accused video products and video product components which allegedly practice the '350 Patent and Innovus' patent rights in the '350 Patent have long been exhausted with respect to Panasonic's video products and components.

## V.    PANASONIC IS PROTECTED FROM CLAIMS FOR DIRECT INFRINGEMENT OF THE '350 PATENT

Here, the Court need look no further than the four corners of the 1982 Agreement to find the clear and unambiguous language, which protects Panasonic from assertion of the '350 Patent for direct infringement and which authorizes Panasonic to practice the '350 Patent.

### A.    The Accused Products Are Covered by the 1982 Agreement

The 1982 Agreement expressed Panasonic and Philips' intent to grant broad non-assertion rights, which includes the '350 Patent. Specifically, the 1982 Agreement grants Panasonic non-assertion rights for audio and video products with respect to all Philips (and its subsidiaries') patents entitled to a priority date before January 1, 2005. Indeed, the 1982 Agreement confirms that "it has always been understood" between Panasonic and Philips that neither party shall "assert against the other party any patents rights which are relevant to the manufacture, use, sale, lease or other disposition of **all kinds of audio and video products**." Watanabe Decl., Ex. 1 at 1 (emphasis added).

Although initially covering patents filed prior to 1990, the 1982 Agreement automatically extended for additional five-year periods unless Panasonic or Philips elected to terminate the Agreement by serving notice at least one year prior to the end of the then-current period. See Watanabe Decl., Ex. 1 at 1-2. During these extension periods, the 1982 Agreement covered any patents filed or entitled to a priority date during that period and authorized the practice of these covered patents for the duration of the patent term. See Watanabe Decl. at ¶ 5, Ex. 1 at 2; Peters Decl. at ¶ 3. The 1982 Agreement did not terminate until January 1, 2005. See Watanabe Decl. at ¶ 5; Peters Decl. at ¶ 3. Accordingly, under the 1982 Agreement, Philips agreed not to assert against Panasonic any covered patents filed or entitled to a priority date prior to January 1, 2005 for the full terms of the patents. See Watanabe Decl. at ¶¶ 5-6, Ex. 1 at 2; Peters Decl. at ¶¶ 3-4. Panasonic and Philips subsequently re-affirmed their intentions in the 2007 Agreement by specifically providing that neither Panasonic nor Philips "shall assert any patent rights against the other with respect to 'audio and video products' manufactured and sold" by the other party, and by defining "Covered Patents" as those patents filed or entitled to a priority date prior to January

1, 2005.  Watanabe Decl., Ex. 2 at "Second Whereas Clause," § 1.5.  Notably, the parties entered into the 2007 Agreement due to a dispute that had arisen regarding the interpretation of the term "audio and video products" in the 1982 Agreement as it related to six specific product categories, which included mobile phones, digital still cameras, car navigation systems, optical drives, personal computers, and facsimile.  See Peters Decl. at ¶ 6.  The parties, however, never disputed that televisions and similar video products were covered.  See id.

It is undisputed that the '350 Patent was filed on August 29, 1991 and issued to U.S. Philips Corporation, a Philips subsidiary, on January 18, 1994.  See Yohai Decl., Ex. 1.  Both the application and issuance dates are before January 1, 2005, and therefore, the '350 Patent qualifies as a covered patent.   In addition, the 1982 Agreement's broad definition of video products includes "television receivers, video tape recorders, video cameras, video recorder camera combinations, optical and non-optical video discs and video disc players as well as facsimile, teletext, viewdata and similar systems," and also extends to the components of such video products.  See Watanabe Decl., Ex. 1 at 1.  By the plain language of the 1982 Agreement, the Accused Products fall squarely within the definition of video products.

### B.    The 1982 Agreement Authorizes Panasonic To Practice The '350 Patent

The Federal Circuit has made clear that unconditional covenants not to sue are equivalent to licenses, as both serve as "authorizations" to practice the patent and which exhaust the patent holder's rights.  See TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1276-77 (Fed. Cir. 2009) (the difference between an unconditional covenant not to sue and a license "is only one of form, not substance – both are properly viewed as 'authorizations'," and when such authorizations are granted, the corresponding patent rights are exhausted) (emphasis added); see also De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 242 (1927) (treating covenant not to enjoin infringing act as the equivalent of a license because "[n]o formal granting of a license is necessary in order to give it effect," and  "[a]ny language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license").

1    Here, the 1982 Agreement provides that neither Panasonic nor Philips shall assert against

2    the other party any covered patent rights (*i.e.*, those rights that are "relevant to . . . the

3    manufacture, use, sale, lease or other disposition of all kinds of audio and video products.").

4    Watanabe Decl., Ex. 1 at 1. This language thus authorizes Panasonic to practice the '350 Patent

5    in its video products without restrictions or conditions. Indeed, the relevant agreement in

6    TransCore contained a similar unconditional covenant not to sue: "[TransCore] agrees and

7    covenants not to bring any demand, claim, lawsuit, or action against Mark IV for future

8    infringement." TransCore, 563 F.3d at 1276. The Federal Circuit explained that "this term,

9    without apparent restriction or limitation, thus authorizes all acts that would otherwise be

10   infringements: making, using, offering for sale, selling or importing" and accordingly exhausts

11   the patent rights. Id. at 1276-77 (emphasis added). Accordingly, as in TransCore, Panasonic is

12   authorized to practice the '350 Patent by virtue of its non-assertion rights under the 1982

13   Agreement.

14       **C.    Innovus Cannot Contest The Validity Of The 1982 Agreement**

15   As a subsequent assignee, Innovus cannot now contest the validity of the Agreements and

16   is bound by Panasonic's non-assertion rights which ran with the '350 Patent. It is a well-settled

17   principle of patent law that the assignee of a patent is bound by licenses and non-assertion

18   agreements granted by the assignor or other prior owners of the patent. See, e.g., In re Cybernetic

19   Servs., Inc., 252 F.3d 1039, 1052 (9th Cir. 2001) ("'It had long passed into the text-books that . . .

20   an assignee acquired title subject to prior licenses . . . .'") (quoting Keystone Type Foundry v.

21   Fastpress Co., 272 F. 242, 245 (2d Cir. 1921)). This principle applies equally to situations

22   involving multiple patent assignments. See, e.g., L.L. Brown Paper Co. v. Hydroiloid, Inc., 118

23   F.2d 674, 677 (2d Cir. 1941). This principle is so firmly established that at least one jurisdiction

24   has implied that sanctions would be appropriate if a subsequent assignee continued a patent

25   infringement suit despite being aware of a prior covenant not to sue. See V-Formation, Inc. v.

26   Benetton Group SpA, No. 02-CV-02259, 2006 WL 650374, at *8-9 (D. Colo. Mar. 10, 2006)

27   (granting summary judgment for accused infringer and stating that "plaintiff's position was barely

28

1   (not 'certainly') 'good enough to avoid sanctions'" where plaintiff continued suit for infringement

2   after defendant informed plaintiff of pre-existing covenant).

3        An assignee is bound even when the assignee is not aware of the existence of a prior

4   authorization to practice the patent.  <u>See, e.g.</u>, <u>Boehringer Ingelheim Vetmedica, Inc. v. Merial,</u>

5   <u>Ltd.</u>, No. 3:09-CV-212, 2010 WL 174078, at *9 (D. Conn. Jan. 14, 2010) (although patent

6   assignment made no mention of the existence of two prior license agreements, an assignee of a

7   patent nonetheless takes title to the patent subject to existing licenses).  Some courts have even

8   held that a subsequent assignee has an obligation to inquire about the existence of any outstanding

9   licenses or agreements that would apply to the patent.  <u>See, e.g.</u>, <u>Sanofi, S.A. v. Med-Tech</u>

10   <u>Veterinarian Prods., Inc.</u>, 565 F. Supp. 931, 940 (D.N.J. 1983) (a bona fide purchaser is under an

11   "obligation to inquire of the seller as to the existence of any outstanding licenses" and cannot

12   complain when he later discovers that a prior license "interferes with his right of enjoyment").

13        As a subsequent assignee, Innovus took title to the '350 Patent subject not only to

14   Panasonic's non-assertion right authorizing its practice but also the  exhaustion of those patent

15   rights with respect to Panasonic's Accused Products.  As the Supreme Court has stated, "[t]he

16   longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented

17   item terminates all patent rights to that item," and that "[e]xhaustion is triggered only by a sale

18   authorized by the patent holder."  <u>Quanta Computer, Inc. v. LG Elecs., Inc.</u>, 553 U.S. 617, 625,

19   636 (2009).  Clarifying the application of this doctrine within the context of an unconditional

20   covenant not to sue, the Federal Circuit in <u>TransCore</u> held that the relevant inquiry is whether the

21   covenant at issue authorizes sales and held that the district court correctly found that the sale to a

22   third party exhausted the asserted patent rights.  <u>TransCore</u>, 563 F.3d at 1277.  Here, as in

23   <u>TransCore</u>, the 1982 Agreement authorized Panasonic's sale of video products which practiced

24   the '350 Patent, and Panasonic's first authorized sales of the Accused Products therefore

25   exhausted U.S. Philips Corporation's rights in the '350 Patent.  Innovus could not have acquired

26   any more rights in the '350 Patent than U.S. Philips Corporation had at the time it assigned the

27   '350 Patent.

28

**D.**      **Panasonic And Philips Have Confirmed The Application And Scope Of The 1982 Agreement As It Applies To The Patent-In-Suit, Which Innovus Has No Factual Basis To Dispute**

The plain and unambiguous language of the 1982 Agreement authorizing Panasonic to practice the '350 Patent is confirmed by the parties to the agreement, as set forth in the declarations of Philips' and Panasonic's representatives.  These declarations leave no doubt that the parties to the 1982 Agreement against that Panasonic received broad non-assertion rights which encompass the '350 Patent.  Tellingly, despite requesting additional time to depose these individuals, Plaintiff has not pursued such depositions. See Yohai Decl. at ¶ 2.

Ruud Peters, the Chief Intellectual Officer of Philips and the Philips' representative who executed the 2007 Agreement on behalf of Philips, attests that "the rights granted to Panasonic to practice Philips patents filed or entitled to a priority date prior to January 1, 2005 did not end upon termination of the 1982 Agreement," but rather, "Panasonic's right to practice the pre-2005 Philips patents continues for the full lives of those patents."  Peters Decl. at ¶ 4 (emphasis added).  Mr. Peters also confirms that "the '350 Patent is covered by the 1982 Agreement," and that "Philips agreed not to assert that patent against Panasonic for the life of that patent with respect to 'all kinds of audio and video products.'"  Id. at ¶ 7.  Mr. Ruud further confirms that the 2007 Agreement did not affect Panasonic's non-assertion rights under the 1982 Agreement.  Id.[6]

The exact same understanding has also been attested to by Panasonic's representative, Tetsuyuki Watanabe, who is the person at Panasonic most knowledgeable about the 1982 Agreement and helped negotiate the 2007 Agreement.  Mr. Watanabe, the Director of the Licensing Center of the Intellectual Property Rights Operations Company of Panasonic Corporation, confirms that the 1982 Agreement provided both Philips and Panasonic with broad

---

[6] Plaintiff has suggested during the parties' meet and confer that the law of England and Wales should be applied because the 2007 Agreement refers to such law.  Plaintiff's position is wrong.  The non-assert arises from the 1982 Agreement which has no provision about application of the law of England and Wales.  Moreover, section 6.10 of the 2007 Agreement merely states that "the applicable substantive law of the Agreement shall be the law of England and Wales."  It says nothing about the 1982 Agreement.  Further, there is simply nothing to interpret under either agreement here because both Panasonic and Philips agree that the '350 patent is and always has been covered.

non-assertion rights to practice each other's patents in their respective audio and video products for the lives of those patents.  Watanabe Decl. ¶¶ at 4-6.  Mr. Watanabe confirms that the termination of the 1982 Agreement did not affect Panasonic's authorization to practice the covered patents because Panasonic was authorized to practice those patents for their entire lives, and that the termination merely meant that Panasonic could not practice Philips or its subsidiaries' patents that were filed or were entitled to a priority date after 2005.  Id. at ¶¶ 5-6.  Mr. Watanabe also confirms Philip's understanding that the '350 Patent was covered by the 1982 Agreement, that Philips authorized Panasonic to practice the '350 Patent in Panasonic's video products and video product components for the entire life of the '350 Patent, and that the 2007 Agreement did not affect the non-assertion rights that Panasonic received from Philips.  Id. at ¶¶ 7-8.

Because the parties have operated for nearly thirty years under the belief that Panasonic is authorized to practice Philips' and its subsidiaries' covered patents in Panasonic's audio and video products, Innovus – a stranger to the Agreements – cannot be allowed to offer a different interpretation of Panasonic's longstanding contractual rights.  As long ago held by the Supreme Court, "[t]he practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed to have great, if not controlling influence."  Old Colony Trust Co. v. Omaha, 230 U.S. 100, 118 (1913).  Because both of the contracting parties agree on the Agreements' meaning, Innovus cannot contest this shared understanding.  See Argonaut Ins. Co., 701 F.2d at 96-97 (holding that summary judgment should be granted where the original contracting parties agreed on the contract's meaning).  This is particularly so here, where there are also no documents or testimony that alter these parties' shared understanding.  Accordingly, summary judgment is appropriate here.

**CONCLUSION**

For all the foregoing reasons, Panasonic's motion for summary judgment should be granted in Panasonic's favor and against Innovus.

Dated:  May 10, 2013                     WEIL, GOTSHAL & MANGES LLP


                                         By:      */s/ Christopher J. Cox*
                                                 Christopher J. Cox

                                         WEIL, GOTSHAL & MANGES LLP
                                         201 Redwood Shores Parkway
                                         Redwood Shores, CA  94065

                                         DAVID L. YOHAI (admitted *pro hac vice*)
                                         ADAM C. HEMLOCK (admitted *pro hac vice*)
                                         WEIL, GOTSHAL & MANGES LLP
                                         767 Fifth Avenue
                                         New York, NY  10153

                                         Attorneys for Defendants
                                         Panasonic Corporation and
                                         Panasonic Corporation of North America