UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INNOVUS PRIME, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PANASONIC CORPORATION AND PANASONIC CORPORATION OF NORTH AMERICA, INC.,<br><br>Defendant. | Case No. C-12-00660-RMW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re Docket Nos. 53, 64] |

Defendants Panasonic Corporation and Panasonic Corporation of North America, Inc. (collectively "Panasonic") move for summary judgment that they do not infringe U.S. Patent No. 5,280,350 ("'350 Patent"). Plaintiff Innovus Prime, LLC ("Innovus") acquired the '350 Patent on April 17, 2011, as the fourth owner in a chain of assignees. Panasonic relies on a 1982 non-assertion agreement between itself and the original owner of the '350 Patent ("1982 Agreement") as the basis for its authority to practice the invention of the '350 Patent for the duration of the patent's term. Because the court concludes that the 1982 Agreement authorized Panasonic to practice the patented invention for the life of the '350 Patent (which is now expired), and for the reasons explained below, the court GRANTS Panasonic's motion for summary judgment of noninfringement.

## I. BACKGROUND

The United States Patent and Trademark Office issued the '350 Patent on January 18, 1994 to U.S. Philips Corporation, a subsidiary of N.V. Philips Gloeilampenfabrieken, currently doing business as Koninklijke Philips Electronics ("Philips"). The '350 Patent relates to an apparatus for processing picture signals for television.

On December 20, 1982, Philips entered into an agreement with Panasonic whereby each party agreed not to assert against the other any patents relevant to "audio and video products" that were filed (or entitled to priority) before January 1, 2005.[1] Watanabe Decl., Ex. 1 at 1, Dkt. No. 53-4 ("1982 Agreement"). There is no dispute that the '350 Patent is relevant to a video product and was filed before 2005, and thus was subject to the 1982 Agreement between Philips and Panasonic (at least before the patent was assigned). In 2007, Philips and Panasonic entered into a new agreement in which they clarified the definitions of "audio and video products" in the 1982 Agreement (to include six new products that did not exist in 1982). Watanabe Decl., Ex. 2 at 1, 6 Dkt. No. 53-5 ("2007 Agreement").

On February 1, 2008, Philips assigned its interest in the '350 Patent to NXP B.V., "subject to all existing rights, commitments, licenses, non-assertion agreements and the like made by Assignor, [Philips] and/or its affiliates under said Patent Rights and to any extensions of term and/or renewal thereof." Yohai Decl., Ex. 3 at Reel 021411, Frame 0447, Dkt. No. 53-9 ("1st Assignment"). On February 7, 2010, approximately two years following the assignment from Philips, NXP B.V. assigned all rights to the '350 Patent to NXP Holding 1 B.V. (Now Trident Microsystems (Far East) LTD). Yohai Decl., Ex. 4 at Reel 023928, Frame 0496, 0502-0506, Dkt. No. 53-10 ("2nd Assignment"). In April 2011, Trident Microsystems (Far East) assigned all its rights to the '350 Patent to plaintiff Innovus Prime, LLC ("Innovus"). Yohai Decl., Ex. 5 at Reel 026156, Frame 0365-59, Dkt. No. 53-11 ("3rd Assignment"). The '350 Patent expired shortly thereafter, in August 2011. 35 U.S.C. § 154(c) (twenty years from the filing date).

---

[1] The original agreement initially covered patents filed or entitled to priority before January 1, 1990, but pursuant to its terms, the agreement automatically extended for five year periods until one party elected not to extend and gave the requisite notice. On October 22, 2003, Philips elected not to renew the 1982 Agreement and it thus expired as of January 1, 2005.

ORDER
Case No. C-12-00660-RMW
AG/JU
- 2 -

In August 2011, Innovus initially brought a patent infringement action against Panasonic and three other defendants alleging infringement of the '350 Patent. However, the court dismissed Panasonic from the case on misjoinder grounds. On February 9, 2012, Innovus filed the instant patent infringement action against Panasonic. Panasonic moves for summary judgment of noninfringement based on its non-assertion rights under the 1982 and 2007 Agreements.

## II. ANALYSIS

### A. Evidentiary Rulings on Innovus's Motions to Strike

Innovus moves to strike portions of the declarations submitted by Panasonic in support of their motion for summary judgment on the basis that they contain parol evidence, are not supported by personal knowledge, and make legal conclusions.[2] Dkt. Nos. 56 and 64.[3] Innovus also moved for an expedited hearing on the motion to strike in conjunction with the present motion for summary judgment. Dkt. No. 65.[4]

Civil Local Rule 7-3(a) provides that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum" filed in opposition to the motion. Innovus improperly filed its motion separately on two occasions, Dkt. Nos. 56 and 64, but the court nevertheless considers the motions under Federal Rule of Civil Procedure ("Rule") 56(e) because the court agrees that the contested portions of the declarations make impermissible legal conclusions and are improper.

Under Rule 56(e), an affidavit "must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Any affidavit which does not conform to these specifics must be stricken. Civil Local Rule 7-5(b) further provides that

> [a]n affidavit or declaration may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument. Any statement made upon information or

---

[2] Specifically, with regard to the Watanabe Declaration, Innovus asks the court to strike the second sentence of ¶ 5, the entirety of ¶ 6, the second and third sentences of ¶ 7, and the entirety of ¶ 8. With regard to the Peters Declaration, Innovus asks the court to strike the first sentence of ¶ 3 and the entirety of ¶¶ 4-7.

[3] Innovus filed the same motion on two occasions: (1) once in conjunction with its opposition brief, and (2) again one week later accompanied by a motion to expedite.

[4] The court considers Innovus's motion to strike in conjunction with the present motion for summary judgment.

belief must specify the basis therefore. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

Civ. L. R. 7-5(b). An affidavit is conclusory if the facts contained are speculative or in the form of legal conclusions, but not if they are based on the affiant's recollection of the events. *See Orsini v. O/S SeaBrooke O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2001).

Those who participate in the negotiations of contracts are entitled to testify as to their interpretation of ambiguous terms, however their testimony "must be grounded in . . . the parties' expressed intent and understanding during the course of negotiations, rather than simply the witness's own subjective interpretation of the contract." *Onyx Pharma., Inc. v. Bayer Corp.*, 863 F. Supp. 2d 894, 897-98 (N.D. Cal. 2011). The court finds that the contested portions of the declarations are nothing more than impermissible subjective interpretations of the meaning of the 1982 and 2007 Agreements. The Agreements speak for themselves, and the court strikes the contested portions of the declarations.

### B. Choice of Law

The parties disagree on whether this dispute should be governed by the laws of the United States or the laws of England and Wales. Innovus contends that English law applies because Article 6.10 of the 2007 Agreement provides that "the applicable substantive law of the Agreement shall be the laws of England and Wales." Panasonic asserts that the '350 Patent is governed exclusively by the 1982 Agreement which contains no choice of law language. Panasonic further argues that this is a question of patent licensing and exhaustion which is to be governed exclusively by United States federal law.

The interpretation of contracts for rights under patents and patent licenses is "generally governed by state law." *Rhone-Poulenc Agro, S.A. v. DeKaib Genetics Corp.*, 284 F.3d 1323, 1327-28 (Fed. Cir. 2002); *see also Int'l Nutrition Co. v. Horphag Research LTD*, 257 F.3d 1324, 1329 (Fed. Cir. 2001) ("A contractual agreement to apply French law as to ownership is just as valid as an agreement to apply the law of a particular state."); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001) (resolving a contractual licensing dispute under Ontario law).

In contrast to issues of pure contract interpretation, however, federal law applies to both substantive and procedural issues "intimately involved in the substance of enforcement of the patent

right." *Arma Refrigeration, Inc. v. Quadlus, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999). The Federal Circuit has explained that the effect of *a patent assignment* under a contract, as opposed to the interpretation of contract terms themselves, is an issue unique to patent law that is governed by federal law. *See Sky Tech v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("Usually, federal law is used to determine the validity and terms of an assignment . . . ."); *DDB Tech., LLC v. MLB Adv. Media, LP*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (The determination of whether a patent assignment clause creates automatic assignment or obligation to assign is treated as a matter of federal law.).

Here, the parties do not dispute whether the '350 Patent is an audio-video product subject to the 1982 Agreement, or the meaning of any other terms in the 1982 Agreement. Instead, the parties' dispute whether the mutual non-assertion agreement between Philips and Panasonic affected later assignees' patent rights. The effect of the assignments in this case on Panasonic's non-assertion rights is an issue unique to patent law that is "intimately involved in the substance of the enforcement" of the '350 Patent. *See Sky Tech*, 576 F.3d at 1379. Therefore, this dispute is governed by United States federal law.

The court does not agree with Innovus that the choice of law provision in the 2007 Agreement requires this dispute to be resolved under the laws of England and Wales. As discussed *infra*, the 2007 Agreement does not expressly limit or supersede the rights provided in the 1982 Agreement.[5] Regardless of whether the 2007 Agreement affects the 1982 Agreement, however, this dispute centers on the effect of Philip's *assignment* as opposed to general contract interpretation, and United States federal law applies.

**C. Effect of the Assignments of the '350 Patent on Panasonic's Non-Assertion Rights**

The relevant inquiry is whether the covenant not to sue between Philips and Panasonic affected later assignees' patent rights. After examining the 1982 Agreement, the 2007 Agreement, and the chain of assignments, this court concludes that Innovus is bound by the terms of the 1982 Agreement.

---

[5] The plain language of the 2007 Agreement makes clear that the choice of law provision only applies to the 2007 Agreement. *Compare* 2007 Agreement, Article 6.10 ("The applicable substantive law of *the Agreement* shall be the laws of England and Wales") (emphasis added) *with* 2007 Agreement, Articles 6.2-6.9 (all of which contain either "of *this* Agreement *and* the [1982] Agreement" or "of *this* Agreement *or* the [1982] Agreement") (emphases added).

ORDER
Case No. C-12-00660-RMW
AG/JU
- 5 -

### 1. The parties' arguments

Panasonic asserts that the unambiguous language of the 1982 Agreement and the long history of the parties' operations under the agreement illustrate that the parties both created and intended to create an unconditional covenant not to sue for all audio and video patents issued before January 1, 2005, which extended for the full lives of the patents covered. Panasonic argues that, under *TransCore, LLC v. Electric Transaction Consultants Corporation*, 563 F.3d 271 (Fed. Cir. 2009), unconditional covenants not to sue are equivalent to a non-exclusive license, and that all assignees of patents are bound by prior licenses. Therefore, Panasonic insists that Innovus, a subsequent assignee of the '350 Patent covered by the 1982 Agreement, does not possess the right to sue Panasonic for infringing the '350 Patent.

Innovus counters that the 2007 Agreement is controlling and expressly limits the effect of the non-assertion agreement to the first assignment. According to Innovus, the 2007 Agreement creates nothing more than a conditional covenant not to sue (conditioned on the patent being an audio or video patent issued before January 1, 2005), which is not equivalent to a license, and *is not transferable* to subsequent assignees. At oral argument, Innovus relied on *Hilgraeve Corp. v. Symantec Corp.* to support this proposition. 265 F.3d at 1346 (concluding that a covenant-not-to-sue "does not grant a *transferable* license to the patent."). Innovus attempts to distinguish this case from *TransCore* on the grounds that the parties in *TransCore* were the initial signatories of the covenant not to sue, whereas Innovus is the fourth assignee after the agreement. Finally, Innovus contends that the terms of the 2007 Agreement indicate that Panasonic's non-assertion rights were not automatically transferable by assignment because: (1) the 2007 Agreement did not expressly provide that the non-assertion agreement would be automatically binding on future assignees, but rather (2) provided for indemnification in the event that the non-assertion agreement was not *contractually extended* to future assignees.

In response, Panasonic argues that the 2007 Agreement supplements, but does not supersede, the 1982 Agreement, to include six new products not at issue here. Under the 1982 Agreement, as modified by the 2007 Agreement, Panasonic contents that it obtained the unconditional right not to be sued for the full life of the '350 Patent. Panasonic further rebukes Innovus's attempts to

distinguish *TransCore*, asserting that the principle in *TransCore*—that a license and a covenant not to sue are both "authorizations"—is not negated by an assignment. Finally, Panasonic replies that any contractual clause expressly providing for automatic assignment of the covenant not to sue would be redundant because the '350 Patent could not be transferred free of the covenant as a matter of law.

### 2. Unconditional covenants not to sue are equivalent to non-exclusive licenses

Under federal law, there is no substantive difference between an unconditional covenant not to sue and a non-exclusive license. *TransCore*, 563 F.3d at 1276 ("The real question, then, is not whether an agreement is framed in terms of a 'covenant not to sue' or a 'license.' That difference is one of form, not substance—both are properly viewed as 'authorizations.'"). In *TransCore*, the Federal Circuit held that the patentee's covenant-not-to sue authorized the covenantee, Mark IV, to sell the patented invention to the defendant, Electronic Transaction Consultants ("ETC"). *Id.* at 1274. The court reasoned that the covenant not to sue "authorize[d] all acts that would otherwise be infringements: making, using, offering for sale, selling, or importing." *Id.* Thus, for the purposes of patent exhaustion, the court held that the patentee's rights were exhausted with respect to the patented articles sold to ETC by the Mark IV. *Id.*

A patent license is nothing more than a promise by the patent owner not to sue the licensee. *See TransCore*, 536 F.3d at 1276; *see also De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927) ("As a license passes no interest in the monopoly, it has been described as a mere waiver of the right to sue by the patentee."). No particular language or form is necessary to give a license its effect, "[a]ny language . . . from which [one] may properly infer that the owner consents to his use of the patent in making or using it, or selling it . . . constitutes a license." *De Forest Radio*, 273 U.S. at 241. Here, although Philip's "authorization" to Panasonic was in the form of a covenant not to sue, it had the same substantive effect of a non-exclusive license. *See TransCore*, 526 F.3d at 1274; *De Forest Radio*, 273 U.S. at 241-42. The issue is whether Philips could assign the '350 Patent free and clear of the covenant not to sue Panasonic.

It is a longstanding principle that an assignee of a patent takes the patent subject to prior licenses. *Keystone Type Foundry v. Fastpress Co.*, 272 F. 242, 245 (2d Cir. 1921); *see also L.L. Brown Paper Co. v. Hydroiloid, Inc.*, 118 F.2d 674, 677 (2d Cir. 1941) ("The assignee of a patent taking title subsequent to the granting of a license under patent receives no more than the former owner's interest, including the usual rights of a patent owner diminished by the licensee's right to use the patented process within scope of its license."). Patent owners cannot transfer an interest greater than what they possess, so assignees "take[] a patent subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372-72 (Fed. Cir. 2008) (explaining that agreements involving the actual use of the patent "run with the patent" and are binding on subsequent owners, but holding that arbitration clauses in license agreements do not involve actual use and do not run with the patent). Thus, assignment results in the assignee "stepping into the shoes with regard to the rights that the assignor held and not in an expansion of those rights." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001); *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333 (Fed. Cir. 2009) ("Black letter contract law states that the assignment of a contract to an assignee . . . only changes the obligated party, not the scope of the obligation."). Assignment transfers assignor's contract rights, "leaving them in full force and effect." *Medtronic*, 247 F.3d at 60. In sum, "one cannot convey what one does not own." *TransCore*, 563 F.3d at 1275.

This occurs whether or not an assignee had notice. A subsequent assignee "takes title to the patent subject to such licenses, of which he must inform himself as best he can at his own risk." *Jones v. Berger*, 58 F. 1006, 1007 (C.C.D. Md. 1893); *see also V-Formation, Inc. v. Benetton Group SpA*, No. 02-2259, 2006 WL 650374, at *7 (D. Colo. Mar. 10, 2006) (extending this reasoning to covenants not to sue). In *V-Formation*, K-2 Corporation entered into a covenant not to sue with defendant Benetton Group, which included the two patents at issue. *Id.* at *1. K-2 later *assigned* all of its rights to those two patents to V-Formation, Inc. (to settle a separate litigation). *Id.* at *2. V-Formation was unaware of K-2's covenant not to sue Benetton. *Id.* The issue, like the issue here, was whether V-Formation (assignee) could sue Benetton (recipient of covenant not to sue). The court held that V-Formation could not sue Benetton for infringement, because K-2 did not possess

ORDER
Case No. C-12-00660-RMW
AG/JU

- 8 -

the right to sue Benetton, and K-2 *could not have assigned this right* to V-Formation. *Id.* at *5. The court reasoned that "upholding the covenant not to sue . . . does not deprive V–Formation of its ownership interest in the patents; it merely limits its right to sue one entity (Benetton) for infringement." *Id.* at *8. The court also held that V-Formation's lack of knowledge of the covenant not to sue did not entitle it to bring suit. *Id.* at *7 ("The court does not agree that that the doctrine of 'bona fide purchaser' as urged by V–Formation precludes Benetton from asserting the covenant not to sue as a defense in this case."). This case is analogous to the situation here.

### 3. *Hilgraeve*

At oral argument, Innovus relied on *Hilgraeve* for the proposition that the covenant not to sue in this case is *not transferable* in the same way as a license would be. In *Hilgraeve*, the patent owner, Hilgraeve Corp., granted a covenant not to sue to covenantee Delrina, Corp. with respect to patents for software. 265 F.3d at at 1345. The covenant was contained in a Technology Transfer Agreement transferring Hilgraeve's *copyrights* in that software to Delrina. *Id.* at 1340, 1345. Delrina subsequently licensed its intellectual property rights to defendant Symantec Corp. *Id.* at 1340. Hilgraeve sued Symantec for patent infringement, and Symantec argued as one of its defenses to infringement that it had obtained a license to the patent at issue from Delrina. *Id.* at 1344. The Federal Circuit rejected Symantec's argument on the grounds that "Delrina . . . itself never acquired a transferable license to practice the [patent in suit], and Delrina . . . therefore could not sub-license the [patent in suit]." *Id.* The court first concluded that the Technology Transfer Agreement did not transfer any rights to the patent, only the copyrights. *Id.* at 1345. The court also held that the covenant not to sue with respect to the patents did "not grant a *transferable* license to the patent." *Id.* at 1346 (emphasis in orginal).

Unlike the situation in *Hilgraeve*, here, Panasonic is not attempting to convey a license to anyone. Instead, Panasonic is merely seeking *not to be sued*, the right which is possesses under the 1982 and 2007 Agreements. While it is true that Panasonic may not be able to *grant a license* to the '350 Patent to a third party, it is not attempting to do so. The question is whether Philips can convey the right to sue Panasonic, a right which it does not possess, to *assignees*.

ORDER
Case No. C-12-00660-RMW
AG/JU
- 9 -

**4.     Application**

The 1982 Agreement between the Panasonic and Philips was a mutual agreement that neither party would assert patent rights for video and audio patents filed or entitled to a priority date before January 1, 2005 against the other.  1982 Agreement at 1 ("It has always been understood between us that . . . neither [Panasonic] nor Philips shall assert against the other any patent rights.").  The language of the 1982 Agreement is clear that the covenant not to sue extended "for the respective full lives of the patent rights concerned."  1982 Agreement at 2.  The '350 Patent issued to Philips on January 18, 1994, and is thus a covered patent under the Agreements.  The agreement between the parties, regardless of the formal language used, unconditionally authorized Panasonic to make, use, or sell the invention of the '350 Patent for the full life of the patent, and thus has the same effect as a license.  *See TransCore*, 563 F.3d at 1276; *De Forest Radio*, 273 U.S. at 241-42.  Nothing in the 2007 Agreement affects Panasonic's non-assertion rights with respect to the '350 Patent.  The 2007 Agreement, by its terms, is a formal supplement to the 1982 Agreement, to aid the parties in the interpretation of the term "audio and video products" under the 1982 Agreement with respect to six new product categories.  2007 Agreement at 1 ("WHEREAS, the Parties have been engaged in a dispute regarding the interpretation of the term 'audio and video products' under the Original Agreement with respect to the Six Product Categories.").  Nothing in the 2007 Agreement explicitly alters or is inconsistent with the scope of the rights defined in the 1982 Agreement.[6]  The '350 Patent was issued in 1994, under the first five year continuation of the 1982 Agreement, it was not one of the six disputed products, and it is therefore covered by the 1982 Agreement.  Thus, the covenant not to sue with respect to the '350 Patent began on its issuance in 1994 and extended for the life of the patent.

In addition to the unambiguous language of the contract, the parties have operated for years as if consenting to each other's use, without any objection.  *See also Old Colony Trust Co. v. Omaha*, 23 U.S. 100, 118 (1913) ("The practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed to have

---

[6] Specifically, Article 5 of the 2007 Agreement refers to "Interpretation of the Original Agreement," and Article 2 states: "[t]he parties confirm and agree that the Six Product Categories are within the scope . . . [of] the [1982] Agreement." This clearly indicates that the 2007 Agreement acknowledges the Original Agreement to still be in effect and not superseded.  Moreover, nothing in Article 5 alters any of the parties' non-assertion rights.

great, if not controlling influence."). The parties' conduct bolsters what the plain and unambiguous language of the contract creates: an implied non-exclusive license.

While this court understands the unfairness that may arise from an assignee not being on notice of a prior covenant not to sue or license, it is well settled that assignees take a patent subject to any prior licenses. *See In re Cybernetic Servs.*, 252 F.3d 1039, 1052 (9th Cir. 2001). And licenses are not required to be recorded any more than covenants not to sue. *See id.* (holding that security interests that do not involve transfers of rights do not need to be recorded as they are "a 'mere license' . . . [and] not an 'assignment, grant or conveyance' within the meaning of 25 U.S.C. § 261"; *see also Keystone*, 272 F. at 245 ("[I]t had long passed into the text-books that . . . an assignee acquired title subject to prior licenses of which the assignee must inform himself as best he can, and at his own risk."). The assignee's duty to inform himself of encumbrances on the patent rights exists regardless of the formal definition of the agreement as a covenant not to sue. As such, the fact that Innovus is a fourth generation assignee does not change the fact that Innovus did not acquire the right to sue Panasonic under the '350 Patent because neither Philips nor any later assignee could "convey what [it] does not own." *TransCore*, 563 F.3d at 1275.

Moreover, the first assignment, from Philips to NXP B.V., specifically states that the Assignee, NXP B.V., took the patent

> subject to Assignor [Philips] retaining a royalty free, world wide, non-exclusive, irrevocable and unrestricted license . . . and further subject to all existing rights, commitments, licenses, non-assertion agreements and the like made by the Assignor . . . and/or its affiliates under said Patent Rights and to any extension of term and/or renewals thereof.

1st Assignment at Reel 021411, Frame 0447. Thus, NXP B.V. expressly took the patent subject not only to Philip's continued license, but also subject to Panasonic's non-assertion rights. A patent owner cannot transfer an interest greater than what it possesses. *TransCore*, 563 F.3d at 1275; *Epistar*, 566 F.3d at 1321. Because Philips never possessed the right to sue Panasonic, Philips could not convey that right to NXP B.V., NXP B.V. could not convey that right to NXP Holdings, and NXP Holdings could not convey that right to Innovus. All of these assignments are available as a matter of public record, including the first assignment from Philips to NXP B.V., which contains the

express limitations on the rights transferred and should have put Innovus on notice of the non-assertion rights (although notice is not required, as explained *supra*).

The court is also not persuaded that the analysis changes in view of: (1) the absence of an explicit clause in the 1982 or 2007 Agreements binding all future assignees; (2) Article 6.5.4 of the 2007 Agreement; or (3) Article 4 of the 2007 Agreement.  First, the court agrees with Panasonic that any explicit clause in the 1982 or 2007 Agreements binding all future assignees to the non-assertion agreement would be redundant because, as explained, Philips could not convey the right to sue Panasonic in any event.

Second, Article 6.5.4 of the 2007 Agreement only confirms that Philips did not possess the right to sue Panasonic.  The provision states that nothing in either Agreement "shall be construed as: conferring by implication, estoppel or otherwise, upon any Party hereunder, any license or other right under any Patent, except the *non-assertion rights* expressly granted herein."  2007 Agreement, Article 6.5.4 (emphasis added).  This plain language is clear that the clause was not intended to limit the continued application of the covenant not to sue.

Finally, neither does Article 4 of the 2007 Agreement—which refers to what should be done in the event of acquisition of subsidiaries, divestiture of business, and transfer of patent rights falling within the scope of the agreement—change the analysis.  Article 4.4 requires that, in the event of transfer of rights, each party should

> contractually require the entity acquiring said Patents to continue to provide the rights granted under the [1982] Agreement and this Agreement to the other Party.  In the event that a Party transfers one or more of the Patents but fails to comply with the requirements of this . . . said Party shall indemnify and hold harmless the other Party.

This clause merely reiterates what the law already requires: subsequent parties are bound by the existing agreement.  At most, this clause provides a guarantee of notice to the future assignee, ideally to avoid lawsuits like the instant one.[7]  Similarly, the letter from NXP B.V., the first assignee, to Panasonic merely acknowledged that they would continue to honor the non-assertion agreement with respect to the '350 Patent.  Watanabe Decl., Ex. 3 Dkt. No. 53-3 ("NXP B.V.

---

[7] Innovus alleges that under English law's purposive interpretation of contracts, it would be a breach of contract for Philips or any later assignee transfer the patent without a limitation written into the assignment.  Whether Philips is in breach of contract, however, does not change the fact that the Philips could not convey the right to sue Panasonic.

Letter"). As explained, however, this acknowledgment does not change the fact that Philips could not convey the right to sue Panasonic, a right which it did not possess.

Therefore, whether the Philips-Panasonic agreement is referred to as a "non-exclusive license" or a "covenant not to sue," under either name, it took away Philip's right to exclude Panasonic from practicing the invention of the '350 Patent. Philips, then, could not convey the right to exclude Philips to NXP B.V. and so on, to Innvus. Innovus does not possess the right to sue Panasonic for infringement of the '350 Patent.[8]

### III. ORDER

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.



Dated: July 2, 2013

RONALD M. WHYTE
United States District Judge

---

[8] Panasonic also argues that Innovus's patent rights were exhausted. The court concludes that a patent exhaustion analysis is not required to reach the conclusion that Innovus does not possess the right to sue Panasonic.

ORDER
Case No. C-12-00660-RMW
AG/JU
- 13 -